## Case No. 6,557.

### HODGE ads. BEMIS.

[2 Am. Law J. (N. S.) 337; 12 Law Rep. 470.]

District Court, N. D. New York. Nov. 16, 1849.

ADMIRALTY PRACTICE—PROCESS OF ARREST.

The libellants in an admiralty suit in personam, are entitled, under the rules prescribed by the supreme court of the United States regulating the practice in causes of admiralty and maritime jurisdiction, to process of arrest against the person of the defendant, notwithstanding imprisonment for debt has been abolished by law in the state where the suit is brought.

[This was a libel in admiralty by Elijah St. John Bemis and Asaph S. Bemis against Philander Hodge.]

CONKLING, District Judge. The defendant having been arrested on mesne process, issued at the suit of the libellants, a motion is now made, in his behalf, to discharge him from arrest, on the ground that the process was not warranted by law. In January, 1845, in pursuance of the act of congress of August 23, 1842, c. 188 [5 Stat. 516], the supreme court of the United States prescribed a code of rules to regulate the practice of the courts of the United States, in cases of admiralty and maritime jurisdiction. Among these rules are the following: "In

suits in personam the mesne process may be by a simple warrant of arrest of the person of the defendant, in the nature of a capias, or by a warrant of arrest of the person of the defendant, with a clause therein that if he cannot be found, to attach his goods and chattels to the amount sued for, or, if such property cannot be found, to attach his credits and effects to the amount sued for, in the hands of the garnishees named therein; or by a simple monition, in the nature of a summons to appear and answer to the suit, as the libellant shall, in his libel or information, pray for or elect." "In all cases when the decree is for the payment of money, the libellant may, at his election, have an attachment to compel the defendant to perform the decree, or a writ of execution in the nature of a capias, and of a fieri facias, commanding the marshal, or his deputy, to levy the amount thereof of the goods and chattels of the defendant; and for want thereof, to arrest his body to answer the exigency of the execution. In all other cases, the decree may be enforced by an attachment to compel the defendant to perform the decree; and upon such attachment the defendant may be arrested and committed to prison until he performs the decree, or is otherwise discharged by law, or by the order of the court." At the date of these rules, process of arrest, both mesne and final, had, at all times, been in familiar use in courts of admiralty of this country as well as of other countries. In thus openly sanctioning this form of process the two rules above recited were but simply declaratory of the antecedent general law. But imprisonment for debt had been previously abolished in the state of New York, and in several other states; and by the act of congress of February 28, 1839, c. 355 [5 Stat. 321], and the supplemental act of January 14th, 1841 [Id. 410], these state laws, and any others for the like purpose which might by any of the states be subsequently enacted, were expressly adopted and declared obligatory upon the courts of the United States, sitting in the states where they should exist. The language of these rules, purporting to have been framed under a power conferred by a subsequent act of congress, is nevertheless explicit and unlimited. On what ground then can the courts for whose guidance they were prescribed, lawfully refuse to carry them into effect?

It has been suggested that the above cited acts of congress. adopting the state laws, may have been inadvertently overlooked by the supreme court. But until the inferior courts shall have been informed by that court, it would be neither decorous nor proper for them to act upon this assumption; and besides, even conceding it to be well founded, the rules would still be valid and obligatory. if the supreme court had power to prescribe them. It has been intimated, also, that congress had no authority to delegate to the supreme court a power so important as that of restoring the right to imprisonment for debt, after it had been abolished by law. But there are not wanting many instances of the delegation, by congress, of powers in their nature legislative, and which have nevertheless been adjudged to be valid, or been acquiesced in as such. Thus, for example, authority has been given by law to the secretary of war to prescribe regulations relative to the granting of pensions, in pursuance of which he has directed certain oaths to be taken, and has designated certain officers by whom they are to be administered; and it has been judicially held that false swearing, under these regulations, constitutes the crime of perjury. It has, moreover, been argued that the rules in question were not warranted by the language of the act, in pursuance of which they were framed. It is readily conceded that to justify the engrafting of even so limited an exception, upon a statute designed to secure the personal liberty of the citizen, the authority ought to be clear. On referring to the act of 1842, it will, however, be seen that it does, in terms, invest the supreme court with plenary power and authority to regulate the forms of process and the whole practice of the courts of the United States. But, even admitting the power to be doubtful, it cannot reasonably be expected of this court, that it should assume to sit in judgment upon the acts of the supreme court, on a charge of usurpation.

In regard to all these objections, it is to be farther observed, that they severally assume as unquestionable that the above cited acts of 1839 and 1841 were intended by congress, to embrace suits in admiralty, as well as those at common law. But the supreme court may have thought otherwise. The acts of congress abolish imprisonment for debt on process issuing from a court of the United States, where it is forbidden by the state law. But there are no state courts of admiralty, and no admiralty process, therefore, to which the state laws, proprio vigore, apply. Perhaps, however, the most probable supposition is, that the supreme court, whatever it might suppose to be the true construction of the acts of 1839 and 1841, believing itself fully warranted by the subsequent act of 1842, even to restore to suitors in the admiralty, if in truth it had been abrogated, the right to all the customary and long established forms of process, was of opinion that the abolition of the process of arrest, and along with it, of those securities exacted and enforced by means of it, so conducive to the effectual and speedy enforcement of justice, would be unwise and inadmissible. But whatever views of the subject may have governed the supreme court, in the adoption and promulgation of the rules in question, I consider it to be my duty to give effect to them. until I shall be otherwise instructed by that court. The motion for the discharge of the defendant is, therefore, denied.